Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6930 | **DATE** | 10/20/2003 |
| **CASE TITLE** | Leopoldo Lopez vs. Chicago Faucet Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 18 Nov. 03 at 9:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: Chicago Faucet Company's Motion for Summary Judgment as to Count 1, National Origin Discrimination, is GRANTED. Chicago Faucet Company's Motion for Summary Judgment as to Count 2, Retaliation, is GRANTED N PART AND DENIED IN PART.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices — | |
| | Notices mailed by judge's staff. | | OCT 2 1 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 21 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | 03 OCT 21 AM 7:56 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
OCT 2 0 2003
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

LEOPOLDO LOPEZ,

        Plaintiff,

v.

CHICAGO FAUCET COMPANY,

        Defendant.

Case No. 02 C 6930

Hon. Harry D. Leinenweber

DOCKETED
OCT 2 1 2003

## MEMORANDUM OPINION AND ORDER

Plaintiff Leopoldo Lopez (hereinafter "Lopez") filed suit assessing national origin discrimination and retaliation. The Defendant Chicago Faucet Company (hereinafter, "CFC" or "Defendant") has moved for summary judgment.

For the reasons stated herein, CFC's Motion for Summary Judgment is granted in part and denied in part.

### I. FACTUAL FINDINGS

Lopez began working at CFC in 1994. From 1994 to 1996, he worked in the Foundry Shakeout position, a Grade 4 position. In 1996, he got transferred to the Assembly Department, a slightly higher paying Grade 4 position. Lopez worked in the Assembly Department until November 2000.

While working Assembly in June 1999, Lopez signed a letter supporting a Polish-American employee, Zdzislaw Milkowski ("Milkowski"), who complained of national-origin discrimination. A few days later, Lopez supposedly repudiated this support in a subsequent letter. Lopez does not speak English, and claims that he

was "tricked" into signing the second statement - which was written in English.

During the time he worked Assembly, Lopez allegedly complained several times about poor treatment from his manager, Leon Harris, to Company official Steven Kalisz ("Kalisz"). Lopez insists that these were complaints of national origin discrimination, although CFC insists they merely concerned general unhappiness. Lopez claims that CFC responded to these complaints by reprimanding him over a trivial matter. CFC denies that Lopez received any discipline in 1999, and Lopez does not specify what this discipline entailed.

In October 2000, Lopez's Assembly supervisor, James Rendall ("Rendall"), suspended him for three days, allegedly for insubordination. Lopez insists that Rendall's real motive was national origin bigotry, claiming that Rendall called him a "stupid Mexican" and attacked him for not speaking English. Lopez claims he complained about this discrimination to Kalisz.

In November 2000, Lopez got "bumped" back to the Shakeout position due to layoffs in the Assembly department. In December 2000, he suffered an injury while working Shakeout. As a result, Lopez served on restrictive duty until either February or April of 2001. While on restrictive duty, Lopez claims that his superiors "several times" ordered him to work Shakeout, despite the difficulty of the work.

In May 2001, Lopez returned to the Assembly department. On October 3, 2001, Lopez submitted a doctor's note to Rendall stating

that he could not work until further notice, though the doctor later agreed that Lopez could perform limited duties. Rendall sent an e-mail accusing Lopez of faking his injury. Oddly, Rendall also reprimanded Lopez for not reporting a workplace injury or re-injury. Beginning on October 18, 2001, CFC cut Lopez's pay by $1.00 per hour, in accordance with the Collective Bargaining Agreement (the "CBA") provision that allows such reductions for workers placed on restrictive duty due to work-related injuries. Human Resources employee Laura Helm ("Helm") performed the paperwork for this action. Lopez contends that his illness was not work-related, and that the pay reduction he suffered constituted retaliation for his complaints of discrimination and efforts on behalf of Milkowski. In response, CFC states that it "reasonably believed" that Lopez's injury was work-related. Further, CFC claims that, had Lopez's injury not been work-related, Lopez never would have been eligible for restrictive duty in the first place.

On October 22, 2001, Lopez filed an affidavit in support of Milkowski's discrimination lawsuit. CFC contends that the relevant decision makers did not know of Lopez's affidavit until after all matters in this case occurred. Lopez, however, notes that his name was listed as a possible witness in Milkowski's interrogatory answers, and that it was well known that he had supported that employee's initial discrimination complaints in 1999. He states that his manager Rendall, and Human Resources officials Kalisz and Linda

Trucano ("Trucano") knew of the affidavit in either October or November 2001.

On October 25-26, 2001, CFC "bumped" or laid-off eight Assembly department employees, all of whom had more seniority than Lopez. CFC allowed Lopez to remain in the Assembly department until Lopez's doctors restored him to regular duty on November 26, 2001. The next day, CFC offered him the choice of a layoff or bumping into two lower-paying Grade 3 positions -- a "Teardown" position and a "Maintenance/Janitorial" position. Though qualified under the CBA, CFC did not offer Lopez his old Grade 4 Shakeout position. CFC Human Resources employees Kalisz and Vernon Hansen made the decision to eliminate Lopez's Assembly position, while employees Trucano and Human Resources employee Gregory Pryatel determined which jobs to offer Lopez. CFC contends it acted out of concern for Lopez's health and safety. Lopez believes that this rationale is pre-textual, and that in reality the refusal to offer him Shakeout constituted retaliation for complaining of discrimination and supporting Milkowski. Lopez also argues that CFC should have offered him a Grade 4 "Marker" position, and a Grade 3 "Air Test" position. CFC contends that Lopez lacked the qualifications for these positions.

As seen above, Lopez's complaint alleges several discrete acts of retaliation and/or national origin discrimination. Specifically, he alleges the following acts of retaliation and/or discrimination:

> (1) In 1999, CFC coerced Lopez into signing a statement denying he had witnessed discrimination.

(2) CFC disciplined and reprimanded Lopez based on allegations it knew to be false. This included one alleged reprimand in 1999, a three-day suspension for insubordination in 2000, a warning for failure to report an injury in October 2001, and a docking of $1.00 per hour in October 2001 on the allegedly false grounds that Lopez suffered a workplace injury.

(3) CFC informed Lopez in March or April of 2001 that it would no longer cover his medical expenses.

(4) In November 2001, CFC eliminated Lopez's Grade 4 Assembly position. CFC offered Lopez a choice of demotion to a Grade 3 Teardown position, a Grade 3 Maintenance position or a layoff. CFC improperly did not offer Lopez the option of transfer to the Grade 4 Shakeout position, a Grade 4 Marker position, or a Grade 3 Air Test position. CFC also improperly failed to offer to recall Lopez from layoff for those positions.

As discussed below, the Court grants summary judgment for CFC with respect to any of Lopez's claims arising from incidents in 1999 and 2000, as these claims are time-barred. The Court also grants summary judgment for CFC as to the claims regarding unpaid medical bills, as Lopez failed to support these allegations with anything beyond his initial complaint. Furthermore, the Court grants summary judgment on claims relating to the October 2001 warning, as the Court finds that the warning did not constitute an "adverse employment action." Finally, the Court grants CFC summary judgment with respect to Lopez's claims regarding the October 18, 2001 pay-cut and CFC's refusal to offer Lopez the Marker and Air Test positions (either in November 2001 as a transfer, or subsequently as a recall from layoff), as Lopez failed to establish a *prima facie* case of

- 5 -

retaliation or discrimination on these issues. However, the Court finds a triable issue of fact as to whether CFC retaliated against Lopez by not offering him the Shakeout position. Accordingly, the Court declines to grant CFC full summary judgment, and the parties shall proceed to trial on the retaliation/Shakeout issue alone.

## II. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if it could affect the outcome of the suit under the governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The burden is initially upon the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In assessing the moving party's claim, the court must view all the evidence and any reasonable inferences that may be drawn from that evidence in the light most favorable to the nonmoving party. *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000). Once the moving party has met its burden, the nonmoving party "may not rest upon the mere allegations" contained in its pleading, but rather "must set forth

specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *Becker v. Tenenbaum-Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). It "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### B. Timeliness

For discrimination and retaliation claims brought under Title VII, an action is time-barred unless based on an incident occurring within 300 days of filing charges with the Equal Employment Opportunity Commission (the "EEOC"). 42 U.S.C. § 2000e-5(e)(1). Here, Lopez filed his EEOC charges on December 28, 2001. Therefore, he may not proceed on any claim arising before March 3, 2001. Consequently, Lopez's claims stemming from an alleged coerced statement in 1999, an alleged reprimand in 1999, and a suspension for insubordination in 2000 are each time-barred absent a showing of a need for equitable tolling, or a claim of a hostile work environment. *Nat. Railroad Passenger Corp. v. Morgan*, 536 US 101, 122 (2002). Since Lopez claims neither exception, these claims fail. However, Lopez may admit them as background evidence in support of his other claims.

### C. Local Rule 56.1 Statements

Local Rule 56.1 of the United States District Court for the Northern District of Illinois ("Local Rule 56.1") establishes

procedures that both moving and opposing parties must follow in filing and responding to a motion for summary judgment. Under Local Rule 56.1, the moving party must submit a statement of material facts with "references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 56.1(a)(3). In turn, the opposing party must file "a response to each numbered paragraph in the moving party's statement," and, in the case of disagreement, provide specific references to supporting evidentiary material. Local Rule 56.1(b)(3)(A). If the opposing party does not respond and controvert the moving party's statement of material facts, those facts are deemed to be admitted for the purposes of the motion. Local Rule 56.1(b)(3)(B); *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003).

Here, Lopez failed to respond to CFC's Local Rule 56.1 Statement 13. Statement 13 disputes Lopez's claim that CFC stopped paying his medical expenses. Not only did Lopez not respond to Statement 13 specifically, but he put forth no allegations or evidence beyond his complaint to substantiate his medical expenses claim. Accordingly, the Court deems Statement 13 admitted, and grants summary judgment for CFC with respect to Lopez's retaliation claim regarding unpaid medical bills.

### D. Adverse Employment Actions

The Seventh Circuit limits relief under Title VII to "adverse employment actions." Though broadly defined, actionable conduct must involve a "significant change in employment status, such as hiring,

firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Bell v. Envtl. Prot. Agency*, 232 F.3d 546, 555 (7th Cir. 2000). Consequently, "unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions." *Grube v. Lau Industries, Inc.*, 257 F.3d 723, 729 (7th Cir. 2001). Therefore, the Court grants summary judgment for CFC regarding Lopez's claims concerning the October 2001 warning.

Lopez is left with two claims of retaliatory and discriminatory treatment – the October 2001 reduction in pay, and the November 2001 choice of layoff or demotion and subsequent refusal to rehire. Lopez's complaint alleges both national origin discrimination and retaliation in the November 2001 choice of layoff or demotion. Lopez's brief further alleges retaliation, but not national origin discrimination, with respect to the October 2001 reduction in pay.

### E. Retaliation Claim

#### 1. *Definition of Retaliation*

42 U.S.C. § 2000 prevents an employer or labor organization from discriminating against someone because "he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000(e)3(a).

To overcome CFC's summary judgment motion in his Title VII retaliation claim, Lopez must establish retaliatory treatment through either the "direct" or "indirect" method. *Stone v. City of Indianapolis*, 281 F.3d 640, 644 (7th Cir. 2002). The direct method requires Lopez to "provide direct or circumstantial evidence that the *decisionmaker* has acted for a prohibited reason." *Rogers v. City of Chicago*, 320 F.3d 748, 754 (7th Cir. 2003)(italics in original). The indirect method demands Lopez establish a *prima facie* case of retaliation by showing that "after filing the charge only he, and not any similarly situated employee who did not file a charge, was subjected to an adverse employment action even though he was performing the job in a satisfactory manner." *Stone*, 281 F.3d at 644. These are the "two (and only two) distinct routes to obtaining/preventing summary judgment." *Id.*

The Court's task in adjudicating Lopez's retaliation claim is complicated by the fact that *neither* CFC nor Lopez based their summary judgment arguments upon the correct *Stone* test. Instead, both parties chose to rely on the "causal connection" test clearly renounced in *Stone* (*i.e.*, "two (and only two) distinct routes"). *Id.* Indeed, CFC failed to cite *Stone* at all, despite referring to recent *unreported* Seventh Circuit cases, in clear violation of Seventh Circuit Rule 53. Lopez at least managed to mention *Stone*, though he apparently chose mostly to ignore it.

Despite both parties' wishes, however, this Court must follow *Stone* and *Rogers*, as all Seventh Circuit District Courts must in the year 2003. Since Lopez makes neither a post-*Stone* "direct" or "indirect" case, the Court must determine a fair way to view his "causal connection" arguments. After much consideration, the Court has decided to liberally construe Lopez's briefs as making arguments under both the "direct" and "indirect" approaches.

### *2. The Direct Method*

As noted above, the direct method requires, Lopez as plaintiff to "provide direct or circumstantial evidence that the *decisionmaker* has acted for a prohibited reason. A decision maker is the person "responsible for the contested decision" *Rogers*, 320 F.3d at 754 (italics in original, internal citations ommitted). CFC then has an opportunity to contradict Lopez's evidence, and present its own evidence that it would have "taken the adverse employment action against the Lopez even if he had no retaliatory motive." *Stone*, 281 F.3d at 644. If either Lopez's or CFC's evidence stands uncontradicted by the other party, then summary judgment is appropriate. Otherwise, the Court must find a triable issue of fact for the jury.

Here, Lopez presents no direct evidence of retaliation, which requires "an admission by the decision-maker that his actions were based on prohibited animus." *Rogers*, 320 F.3d at 753 (internal citations omitted). Therefore, Lopez's sole recourse under the direct approach is through circumstantial evidence.

Unfortunately, the recent date of the *Rogers* opinion has not given the Seventh Circuit enough opportunity to clarify exactly what constitutes permissible circumstantial evidence. A mere three weeks ago, the Seventh Circuit vacated and agreed to hear *en banc* a case that attempted to do so. *Venturelli v. ARC Community Services, Inc.*, 336 F.3d 606 (7th Cir. 2003), *vac'd by,* 2003 U.S. App. LEXIS 19592 (7th Cir. 2003). As such, this Court has little guidance in determining what constitutes circumstantial evidence, and how strong circumstantial evidence must be to survive summary judgment. Thus, this Court is somewhat "flying blind" in adjudicating questions of circumstantial evidence.

That being said, the Court finds Lopez's circumstantial evidence insufficient to sustain a direct method claim. As noted above, Lopez must produce evidence that the "decision-maker" acted with forbidden intent. Here, the relevant decision-makers were Helm (the October pay cut), Kalisz and Hansen (the November transfer from Assembly), and Trucano and Pryatel (the November choices for demotion or layoff). Lopez put forth no evidence at all specifically with respect to Helm, Hansen and Pryatel. Lopez's only evidence concerning Kalisz and Trucano is that they allegedly knew of Lopez's actions on behalf of Milkowski, the proximity of Lopez's affidavit filing to the employment decisions, and a few minor skirmishes Lopez had with them in the past. Lopez opines that these incidents (the 1999 reprimand and other claims dismissed as time-barred but permitted as background evidence for this claim) amounted to

retaliation for previous complaints of discrimination. However, Lopez supplies no evidence for his belief other than his own assertion. In the Court's view, a few sketchy anecdotes and mere temporal proximity doth not seem sufficient to survive summary judgment via the direct method.

### 3. The Indirect Method

#### a. The Prima Facie Case of Retaliation

Lopez must now turn to the indirect method to obtain relief. As noted above, the indirect method requires Lopez to first establish a *prima facie* case of retaliation by showing: (1) that he filed a charge or engaged in other protected activity; (2) that he was subjected to an adverse employment action; (3) that no other similarly situated employee who did not engage in protected activity suffered; and (4) that he performed his job in a satisfactory manner. As to the remaining claims (the October pay-cut and the November choice of demotion or layoff and failure to recall), CFC's briefs do not contest prongs 1, 2, or 4. Therefore, the Court need only address the "similarly situated" portion of the *prima facie* test.

An employee is similarly situated to Lopez if he "is directly comparable to [the plaintiff] in all material aspects." *Rogers*, 320 F.3d at 755. This burden "normally entails establishing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct." *Snipes v. Illinois Dept. of Corrections*, 291 F.3d 460, 463 (7th Cir. 2002). Note the

qualifier "normally." In this case both sides agree that the CBA controlled the questionable employment decisions. Therefore, the Court defines Lopez as "similarly situated" to other employees in "all material aspects" if he possessed equal or greater rights than them under the CBA.

With respect to the October pay reduction, Lopez does not address whether "after filing the charge only he, and not any similarly situated employee" received an allegedly injury-related pay cut. Therefore, Lopez's claim fails.

As for the November choice of demotion of layoff, Lopez acknowledges that CFC required similarly situated employees to accept layoff or transfer. However, Lopez contends that CFC retaliated against him by violating the CBA to give less senior employees superior work options. Specifically, Lopez claims that his seniority entitled him to elect transfer to a Foundry position held by Pedro Moreno, an Air Test position held by Adan Hernandez, and the Marker position held by Ector Cortez.

CFC disputes that these sample employees were truly similarly situated. Specifically, CFC evidences that Cortez became the Marker only in April 2002, and that the employee serving as the Marker in November 2001 had more seniority than Lopez. Furthermore, since Lopez had no experience as a Marker, the CBA did not permit him to be recalled and "bump" Cortez in April 2002. Similarly, CFC contends that Lopez lacked the seniority to serve as an Air Tester in November 2001, and the Air Test experience necessary to "bump" Hernandez in

April 2002. Lastly, CFC argues that although Lopez possessed the seniority and experience necessary for a Foundry position under the CBA, he was not physically qualified.

Lopez does not rebut CFC's evidence with respect to the Marker and Air Test positions. Accordingly, the Court rejects Lopez's argument that he was similarly situated to either Hernandez or Cortez. Lopez's claims with respect to not being offered those positions, either in November 2001 or subsequently as a recall from layoff, therefore fails. However, Lopez does present evidence that he possessed the physical qualifications for the Foundry position. Since questions regarding Lopez's physical capability to work Shakeout blend with issues of pretext, the Court will discuss this issue more in depth later on. For the sake of this discussion, the Court finds Lopez similarly situated to Moreno. This is because, under the CBA, Lopez had the seniority and experience necessary to "bump" Moreno.

Accordingly, the Court finds that Lopez has met his *prima facie* burden with respect to CFC's refusal to offer him a Foundry position.

### b. Issues of Pretext

Having established a *prima facie* case on the Shakeout issue, Lopez CFC claims that it did not offer him the Foundry Shakeout position out of concern for his health. CFC notes that Lopez was injured while working Shakeout in December 2000, an injury that kept him on restricted duty for months. Not only that, but Lopez's doctor, Dr. Lewis, returned him to restricted duty in October 2001,

- 15 -

releasing him to his "regular duties" in November 2001 only shortly before CFC needed to decide whether to offer him Shakeout. CFC claims it took the release to "regular duties" to refer only to Lopez's work as an Assembler - not any possible work in the Foundry. Consequently, CFC consulted Dr. William Weaver regarding possible job assignments for Lopez. Based on Dr. Weaver's recommendations, CFC decided to offer Lopez only the Teardown position ("recommended without reservation" by Dr. Weaver), and the Maintenance/Janitorial position ("better" than Shakeout in Dr. Weaver's opinion). CFC claims Dr. Weaver's analysis also guided their decision not to offer Lopez the Foundry Shakeout position (which Dr. Weaver thought would "very likely cause Mr. Lopez's symptoms to reoccur").

Lopez counters CFC's claims with evidence suggesting that CFC's stated concern for his health was pre-textual. For instance, Lopez notes that CFC consulted only Dr. Weaver (a physician who never treated him) regarding his job placement, without conferring with his treating physician, Dr. Lewis. Lopez further contends that CFC's exclusive reliance on Dr. Weaver is especially curious in light of CFC's "assumption" that Dr. Lewis's November 2001 medical release concerned only Assembly work, when the actual release placed no limitations on Lopez.

Furthermore, Lopez suggests that if CFC actually based its decision on his health as evaluated by Dr. Weaver, it would not have offered him the Maintenance/Janitorial position. Lopez observes that while Dr. Weaver thought the Maintenance/Janitorial position was

"better," he thought it involved a "heavier work level" than Shakeout, and "would greatly increase any possible reoccurrence of epicondylitis symptoms in the future." Thus, even Dr. Weaver's recommendation (again, a doctor who never examined Lopez) does not support CFC's conduct.

Lopez also claims that, while on restricted duty following the December 2000 injury, CFC twice ordered him to work Shakeout- making CFC's medical concerns even less credible. Although CFC disputes this last allegation, in a summary judgment motion the Court views all evidence and any reasonable inferences that may be drawn from that evidence in the light most favorable to the nonmoving party. *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

Given the above, the Court feels satisfied that Lopez has raised a legitimate triable issue of fact as to whether CFC's refusal to offer him Shakeout constituted retaliation for filing an affidavit supporting Milkowski's discrimination lawsuit in October 2001. This is especially true considering that even CFC admits that decision-maker Trucano knew of Lopez's recent affidavit filing.

### F. National Origin Discrimination Claim

Lopez also cites national origin discrimination as an alternative reason for CFC's complained of conduct against him. For the same reasons as discussed above, the Court grants CFC summary judgment with respect to all of Lopez claims arising in 1999 and 2000 (for being time-barred), the alleged refusal to pay medical benefits

(for not responding to Local Rule 56.1 Statement 13), and the October 2001 warning (for not qualifying as an adverse employment action). This once again leaves only the October pay-cut and November choice of demotion or layoff pending before the Court.

To survive summary judgment on a national origin discrimination claim, Lopez must meet a burden nearly identical to that required in a retaliation claim. Similar to a retaliation claim, Lopez must establish a *prima facie* case of discrimination through either a "direct" or "indirect" method. The direct method requires "direct or circumstantial evidence that the employer's decision to take the adverse job action was motivated by an impermissible purpose, such as her race or national origin." *Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 529 (7th Cir. 2003). The indirect method demands a showing that Lopez: (1) is a member of a protected class; (2) is satisfying the employer's legitimate job expectations; (3) suffered an adverse employment action; and (4) was treated less favorably than similarly situated employees not in the protected class. *Id.* at 530.

Via the direct method, Lopez attempts to establish a discriminatory motive for the employment actions through a few sporadic comments by Rendall and Kalisz. Specifically, Lopez alleges that Rendall called him a "stupid Mexican" and that both Rendall and Kalisz said that he should not work if he does not understand English. These isolated incidents allegedly occurred in October 2000. Additionally, only Kalisz served as a decision-maker regarding the pay-cut issue, and neither Rendall nor Kalisz had any impact on

the November choice of demotion or layoff. Therefore, even if true, the Court finds Kalisz's single comment "far too remote and insubstantial to permit a rational trier of fact to find direct discrimination." *Id.*

Lopez's national origin claims also fail under the indirect approach. Although Lopez identified allegedly similarly situated employees in the retaliation context, Lopez never attempts to define them as "similarly situated" for a national origin discrimination analysis. The Court therefore grants full summary judgment to CFC as to all of Lopez's national origin discrimination claims.

## CONCLUSION

For the reasons stated herein, the CFC's Motion for Summary Judgment as to Count 1, National Origin Discrimination, is **GRANTED**. CFC's Motion for Summary Judgment as to Count 2, Retaliation, is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Date: October 20, 2003