# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 6930 | **DATE** | 6/29/2004 |
| **CASE TITLE** | Leopoldo Lopez vs. Chicago Faucet Company | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

| | | |
|---|---|---|
| (1) | ☐ | Filed motion of [ use listing in "Motion" box above.] |
| (2) | ☐ | Brief in support of motion due _____. |
| (3) | ☐ | Answer brief to motion due_____. Reply to answer brief due_____. |
| (4) | ☐ | Ruling/Hearing on _____ set for _____ at _____. |
| (5) | ☐ | Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (6) | ☐ | Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____. |
| (7) | ☐ | Trial[set for/re-set for] on _____ at _____. |
| (8) | ☐ | [Bench/Jury trial] [Hearing] held/continued to _____ at _____. |
| (9) | ☐ | This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2). |
| (10) | ■ | [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court denies Chicago Faucet's Motion for a New Trial on Liability. The Court enters a judgment of actual damages in the amount of $5,451.64. The Court conditionally grants Chicago Faucet's Motion for a New Trial on Damages, dependent on whether or not Lopez agrees to within 21 days of receipt of this Order. If, and only if, Lopez accepts this Remittitur, then Chicago Faucet's Motion for a New Trial on Damages is denied. |
| (11) | ■ | [For further detail see order attached to the original minute order.] |

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUN 30 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 47 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| WAP | courtroom deputy's initials | 2004 JUN 29 PM 4:30 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

LEOPOLDO LOPEZ,

          Plaintiff,          Case No. 02 C 6930

v.                    Hon. Harry D. Leinenweber

CHICAGO FAUCET COMPANY,

          Defendant.



## MEMORANDUM OPINION AND ORDER

Plaintiff Leopoldo Lopez (hereinafter, "Lopez") filed suit against his employer Defendant Chicago Faucet Company (hereinafter, "CFC") assessing national origin discrimination and retaliation. On October 20, 2003, the Court granted in part and denied in part CFC's Motion for Summary Judgment. See Lopez v. Chi. Faucet Co., 2003 U.S. Dist. LEXIS 18738 (N.D. Ill. 2003). This ruling narrowed the case for trial to the sole issue of whether or not CFC unlawfully retaliated against Lopez for supporting a co-worker's complaint of discrimination (the "2001 affidavit") by permitting him to "bump" into a Foundry Shakeout position when he was laid off from his Assembly job in November 2001.

At trial, a jury awarded Lopez $37,000.00 in compensatory damages and $130,570.00 in punitive damages. CFC has now brought a Motion for A New Trial on Liability, or, in the alternative, for a Remittitur of damages which the Court understands as a motion for a new trial on damages.

47

# I. **MOTION FOR A NEW TRIAL**

The Court should authorize a new trial only when "no rational jury could have found for the plaintiff." Hasham v. California State Bd. of Equalization, 200 F.3d 1035, 1043 (7th Cir. 2000) (internal citation omitted). Courts should be particularly hesitant to overturn a jury's verdict in discrimination cases, since "witness credibility is often crucial." Id. (internal citation omitted). Improperly admitted evidence warrants a new trial only if it had a "substantial and injurious effect or influence on the jury's verdict." United States v. Hanson, 994 F.2d 403, 407 (7th Cir. 1993). Similarly, erroneous jury instructions require reversal "only if the jury's comprehension of the issues is so misguided that it prejudiced the complaining party." United States v. Vang, 128 F.3d 1065, 1069 (7th Cir. 1997).

CFC bases its motion for a new trial on two arguments. First, CFC argues that the Court's erred in permitting the jury to hear evidence regarding a letter signed by Lopez in 1999 supporting a co-worker's discrimination complaint (the "1999 letter"), and CFC's subsequent attempts to "trick" Lopez into recanting this support. Second, CFC contends that the Court also erred by granting a punitive damages instruction, warranting a new trial.

With respect to the 1999 letter, CFC argues that evidence concerning it was inadmissable for any purpose at trial, because

the trial solely concerned CFC's alleged retaliation for Lopez's 2001 affidavit. CFC notes that the sole person responsible for "tricking" or intimidating Lopez into recanting his 1999 letter no longer worked for CFC, and played no part in the decision not to offer Lopez the Shakeout position. Furthermore, CFC contends that Lopez failed to establish that either Linda Trucano ("Trucano") or Gregory Pryatel ("Pryatel"), the decision-makers behind the determination not to offer Lopez the Shakeout position, knew about the 1999 letter or the subsequent efforts to trick or coerce Lopez. Therefore, CFC argues that the 1999 letter played no part in Trucano and Pryatel's alleged retaliatory decision, and only served to prejudice the jury in violation of Rule 401 of the Federal Rules of Evidence.

CFC is correct that the 1999 letter does not serve as direct evidence of whether or not CFC retaliated against Lopez in 2001. For this reason, the Court issued a limiting instruction to the jury to consider the 1999 letter solely as background evidence. However, CFC errs in suggesting that the 1999 letter served no admissible purpose at all. As referenced above, the 1999 letter qualified as background evidence that placed the content of Lopez's 2001 affidavit in context, allowing the jury to understand the conduct that allegedly induced CFC to retaliate. For this purpose, the Court notes that the 2001 affidavit itself refers to Lopez's 1999 letter, and CFC's efforts to trick or pressure Lopez into

recanting it. Without admitting evidence concerning the 1999 letter, the jury would have no way to determine how much of a threat Lopez's 2001 affidavit posed to CFC, and therefore no ability to gage properly CFC's motive for retaliation. As such, evidence surrounding the 1999 letter was highly relevant, and the Court in its discretion believes that this relevance outweighed any possible prejudicial effect, especially in light of the Court's limiting instruction.

Furthermore, even if the Court improperly admitted the letter, such a theoretical error would be harmless. Lopez presented the jury with substantial evidence that CFC retaliated against him. This included damaging cross-examinations of CFC witnesses, in which CFC witnesses recanted or changed their testimony, written memorandums by CFC officials that did not correlate with their testimony, and evidence (discussed later on) that would permit a reasonable jury to conclude that CFC fabricated its purported medical rationale for not offering Lopez the Shakeout position. Therefore, CFC cannot demonstrate the "substantial and injurious effect or influence" on the jury necessary to merit a new trial.

The Court also rejects CFC's argument that the Court's granting of a punitive damages instruction to the jury amounted to prejudicial error requiring a new trial. Even if the Court agreed with CFC that it erred in granting a punitive damage instruction (which is does not), such an error would not warrant a new trial.

When the request for a new trial is based on inappropriate jury instructions, the central question is whether the flawed instruction "confused or misled the jury, causing prejudice to a litigant." Maltby v. Winston, 36 F.3d 548, 560 (7th Cir. 1994). Here, the "flawed" instruction would not affect the jury's underlying verdict of liability in the slightest. The Court instructed the jury to grant punitive damages, "only if you find the defendant acted with malice or reckless indifference," criteria that clearly distinguished a grant of punitive damages from a grant of compensatory damages. The Court cannot fathom how such an instruction would prejudice the jury to find for Lopez on the compensatory damages question in any way and CFC presents no authority to support such a proposition. Accordingly, the Court finds, as explained below, that while it committed no error in granting the punitive damages instruction, any such error would only require the Court to strike the awarded damages, not a new trial.

Accordingly, CFC's Motion for a New Trial on Liability is denied. Previously, the parties had agreed that if the Court upholds the jury's verdict, the Court would award Lopez actual damages in the amount of $5,451.64. Consistent with this agreement, the Court hereby enters an Order of Judgment for actual damages in the amount of $5,451.64.

## II. MOTION FOR REMITTITUR

In lieu of granting a new trial, CFC asks the Court to grant it a remittitur of both the compensatory and punitive damages assigned by the jury at trial. The Court therefore examines each of these awards, in turn.

### A. Compensatory Damages

Compensatory damages in employment discrimination suits are appropriate when the plaintiff demonstrates that the illegal conduct by his employer caused him to suffer emotional distress. Avitia v. Metropolitan Club of Chicago, Inc., 49 F.3d 1219, 1229 (7th Cir. 1995). An award of compensatory damages should be proportionate to the amount of harm suffered, such that the less emotional distress suffered by the plaintiff, the lower the award. Id.

Here, CFC argues that "the only evidence at trial supporting the compensatory damage award was Plaintiff's own self-serving testimony - and even that was very limited." CFC Br. p. 10. CFC notes that, although Lopez complained of depression and sleeping problems, he admitted that the sleeping problems predated CFC's retaliation against him. Furthermore, CFC points out that there is no evidence that Lopez ever sought medical help or counseling, or that his life changed for the worse as a result of CFC's decision not to offer him Shakeout.

Lopez counters by arguing that the "dry trial transcript
. . . does not convey the feelings and sadness the jury observed in
Plaintiff's live testimony." As such, Lopez contends that "the
jury recognized the extent of his distress from the demeanor and
emotion of his testimony."

Having been in the courtroom where I personally observed
Lopez's testimony, I concur with Lopez that the trial transcript
does not fully convey the depth with which Lopez expressed his
emotional distress to the jury. This is especially true
considering that the transcript represents a necessarily-imperfect
translation from Lopez's original Spanish testimony, which
communicated his feelings of anguish and loss of dignity far better
than a written English translation does.

That being said, even when properly recalling the depth of
expression articulated by Lopez, the evidence submitted at trial
does not justify an award of $37,000.00. For example, Lopez
admitted that many of his emotional difficulties predated CFC's
retaliatory conduct toward him in November 2001. Therefore, the
Court reduces the compensatory damage award to $10,000.00, a figure
the Court believes fairly compensates Lopez for the emotional pain
CFC caused him.

### B. Punitive Damages

CFC also asks the Court for remittitur of the jury's award of
punitive damages totaling $130,570.00. To support this argument,

CFC essentially reiterates its argument against even permitting the punitive damage instruction. Specifically, CFC argues that Lopez presented no evidence at trial to permit the jury to find that CFC retaliated against him with malice or reckless indifference.

Once again, the Court disagrees with CFC's contentions. At trial, Lopez introduced a substantial amount of the evidence that permitted the jury to infer that CFC's retaliated with malice or reckless indifference. For example, based on the evidence presented, a reasonable jury could have found that CFC maliciously fabricated its purported "medical" rationale for its November 2001 decision not to offer Lopez Shakeout. CFC claimed that its decision not to offer Lopez the Shakeout position was due solely out of concerns for Lopez's health, and based on the medical opinion of Dr. William Weaver. However, Lopez proved at trial that Dr. Weaver had not treated or even seen Lopez for over a year and that CFC did not even consult Lopez's own company-sponsored treating physician, Dr. Nolan Lewis, before making the alleged "medical" decision. This, despite the fact that Weaver testified that he usually would rely on the opinions of employees' treating specialists. CFC's peculiar sole reliance on Dr. Weaver, and Dr. Weaver's odd refusal to consult Dr. Lewis, certainly permitted the jury to draw the inference that CFC devised its medical rationale not in earnest, but instead as a deliberate sham to punish a trouble-making employee.

Other evidence introduced by Lopez only bolstered such a reasonable inference. For instance, CFC's claims that it was solely concerned with Lopez's health suffered a credibility blow when Lopez introduced evidence, including testimony from one of CFC's own witnesses (Luigi Ciarmello), that Lopez complained about CFC had ordering him to work Shakeout while on medical restriction. Additionally, and perhaps most importantly, Lopez proved at trial that CFC, despite its purported concern for Lopez's health, did offer Lopez a transfer into a maintenance position that even Dr. Weaver conceded would "greatly increase" Lopez's risk of injury.

Obviously, this evidence is not conclusive regarding CFC's intent. It is however sufficient to justify a reasonable jury finding that CFC's purported medical rationale made no sense, and therefore amounted to a deliberate sham orchestrated by CFC to retaliate against Lopez. Such a deliberate sham would certainly qualify as CFC acting with "malice" or "reckless indifference."

However, the form that CFC's retaliation took was relatively minor. CFC did not fire or suspend Lopez, they merely offered him jobs paying slightly less than the job he was rightfully entitled to. Therefore, the Court does not feel the jury's full punitive award is appropriate, especially in light of the Court's decision to reduce the award of compensatory damages. The Court hereby reduces the award to $15,000.00, a figure it believes adequately punishes CFC for their conduct.

The Court conditionally grants CFC's Motion for a New Trial on Damages. The Court reduces the compensatory damage award to $10,000.00, and reduces the punitive damage award to $15,000.00. CFC is entitled to a new trial, unless Lopez, within 21 days of receipt of this order, agrees to the Remittitur of Damages described in this opinion. If, and only if, Lopez accepts this Remittitur, then CFC's Motion for a New Trial on Damages is denied.

### III. CONCLUSION

The Court denies CFC's Motion for a New Trial on Liability. The Court enters a judgment of actual damages in the amount of $5,451.64. The Court conditionally grants CFC's Motion for a New Trial on Damages, dependant on whether or not Lopez agrees to accept the Remittitur of Damages described within this opinion within 21 days of receipt of this Order. If, and only if, Lopez accepts this Remittitur, then CFC's Motion for a New Trial on Damages is denied.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: June 29, 2004